## MORTON vs. MORRIS.

For a debtor to protect himself against loss, by remitting money to his creditor by mail, he must show either the express authority of the creditor to send in that mode, or a usage to that effect in business, from which the creditor's authority may be inferred.

Complaint, in Whitfield Superior Court. Tried before Judge WALKER, at the April Term, 1860.

This case came up, and was adjudicated upon the following state of facts, to wit:

William R. Morton instituted an action in the Superior Court of Whitfield county, against James Morris, to recover the sum due on a promissory note made by the defendant, payable to the order of the plaintiff, dated Charleston, 29th of April, 1856, due at six months, for one hundred and forty-eight dollars and eighty-three cents.

To this action the defendant pleaded, that he had paid the note sued on, by remitting the money by mail to the plaintiff at Charleston, South Carolina, at his request.

It appeared by the evidence adduced on the trial of said case, that the plaintiff, by J. R. Gibbs, his clerk and book-keeper, addressed the following letter to the defendant, to wit:

"CHARLESTON, 18th of May, 1857.

"MR. JAMES MORRIS—*Dear Sir:* We will be exceedingly obliged to you, if convenient, to remit us the amount of your note due Oct. 29, '56, for one hundred and forty-eight dollars and 83 cents, with interest to 28th May, 1857, $6.07, amounting, in all, to $159.90. Money is very scarce here, and your attention will greatly oblige

"Your friend,

"W. R. MORTON,
"per J. R. GIBBS.

"Please send us a draft if possible."

The defendant, on the 26th of May, 1857, deposited in the post-office at Spring Place, Georgia, a letter addressed to the plaintiff at Charleston, South Carolina, which letter contained two one hundred dollar bills, on the Bank of Hamburg, South Carolina, and bills of other banks, making, in all, the sum of two hundred and eighty-four dollars. The letter was duly registered by the said postmaster, and a receipt for the letter given by him to the defendant.

The clerk and bookkeeper of the plaintiff testified that it was the plaintiff's usual custom to write letters to his customers in the country, to remit the amounts of notes past due, but that the plaintiff did not authorize the defendant to mail the money due upon the notes sued on at his—the plaintiff's—risk.

Several letters between the parties were read in evidence, in which the defendant insisted that the money was mailed in strict compliance with the order and instructions of the plaintiff, and that the note was therefore paid; all of which the plaintiff, in his letters, denied, and insisted, upon the contrary, that the money was mailed by defendant at his own, and not the plaintiff's risk.

There was no evidence that the plaintiff ever received the letter containing the money, but, on the contrary, the parties, in their correspondence upon the subject, treated it as lost.

The testimony being closed, counsel for the plaintiff requested the Court to charge the jury as follows, to wit:

"Where a remittance of payment is made by *post,* the debtor must show that it was properly sealed and directed, and delivered to the officer, and it must appear that he was either directly authorized by the creditor to take this course,

or that such had been the usual course of dealing between the parties, from which an authorization may be presumed. He is bound to use all care and diligence appropriate to the occasion, and in case there be no direction by the creditor, the debtor should take the precaution of cutting bank notes, or similar securities."

This charge the Court refused to give, but, on the contrary, charged the jury:

"That if it was shown that the defendant had received a letter from the plaintiff, requesting him to remit the amount of the note sued on, and that the defendant had mailed the amount of said note in bank bills, and that the mail was the usual mode of conveyance between the two points—Spring Place and Charleston—that it was payment by the defendant, whether it was shown that the plaintiff had received the remittance or not, and that in such case it was not necessary for the defendant to cut bank bills, unless so requested by the creditor."

The jury returned a verdict for the defendant.

Whereupon, counsel for the plaintiff moved for a new trial of said case, on the grounds—

1st. Because the verdict of the jury was contrary to and unsupported by the evidence.

2d. Because the verdict was contrary to law.

3d. Because the Court erred in charging, and refusing to charge the jury, as before stated.

The Court refused the new trial, and that decision is the error assigned in this case.

MILNER & PARROTT, for the plaintiff in error.

JOHNSON & JACKSON, for the defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

Under all the circumstances, we think it best to remand this case for a re-hearing. We are not satisfied that the rule of law regulating this transaction was correctly laid down by the Court. Instead, a majority of the Court are inclined to hold that it was not; and we feel quite sure that, upon another trial, the evidence could be made more satisfactory.

Mr. Morris' note was payable at Charleston. Mr. Morton

requested him, by letter, to *remit* the amount, adding, in a postscript, "Please send us a draft if possible." The amount of the note was inclosed in a letter and mailed at Spring Place, the residence of Morris. The letter containing the money was duly registered at the post-office. Whether it was sealed, does not appear.

The rule of law regulating this case is thus stated, with but little variation, in all the text-books: "Payment is often made by letter, and the question arises, at whose risk it is, when so made? This must depend upon circumstances; but in general, the debtor is discharged, although the money do not reach the creditor, if he was directed or expressly authorized by the creditor so to send it, or if he can distinctly derive such authority from its being the usual course of business, *and not otherwise*. 1 *Parson's on Contracts*, 132.

And Mr. Greenleaf says: "When payment is made by a *remittance by post* to the creditor, it must be shown on the part of the debtor that the letter was properly sealed and directed, and that it was delivered into the post-office, and not to a private carrier or porter. He must also prove either the express direction of the creditor to *remit in that mode*, or a usage, or course of dealing, from which the authority of the creditor may be inferred. Where these circumstances concur, and a loss happens, it is the loss of the creditor." 2 *Greenlf. Ev.* §525.

Both writers cite the same authorities, namely: 1 *Peake* 67; *Id.* 186; *Ry. & M.* 149; *Peake on Ev. by Norris*, 412.

It would seem, therefore, that a remittance by post is no discharge, unless there be express authority to send in that mode, or can be inferred from the usual course of business. Indeed, it has been held, that sending bank notes uncut, by direction, will not discharge the debtor; because it is usual among prudent people to cut such securities in halves, and send them at different times.

It is clear, that to *remit* does not *ex vi termini* mean to transmit by mail. Its etymological signification is to send money by bills, check or otherwise, from one person to another, at a distance more or less remote from each other. Mr. Greenleaf does not so understand it; otherwise, he would not be guilty of the tautological blunder of using the phrase, *"remittance by post."*

Perhaps proof can be made upon another trial, that such

was the usual way of transmitting funds from Spring Place to Charleston, and that it was known to Mr. Morton. That it is not the only mode, is quite certain; for not only might private agency be resorted to, but the remittance by express is more reliable; and then the company is liable for loss, which the post-office is not.

As we can not, then, direct a re-argument without ordering a new trial, we prefer to give this case that direction, rather than endorse the doctrine as laid down by the Court in its charge to the jury.

We would suggest, that some effort be made to ascertain whether this letter reached the post-office at Charleston.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court that the judgment of the Court below be reversed, upon the ground that the Court erred in not granting a new trial in this case.